**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | : |
| | : |
| MAGNESIUM CORPORATION OF AMERICA, *et al.*, | Bankr. Case No. 01-14312 (MKV) |
| | (Jointly Administered) |
| Debtors. | : |
| | : |
| THE RENCO GROUP, INC. and IRA LEON RENNERT, | : |
| | : |
| Appellants, | Civil Action No. 16-cv-06822 (DLC) |
| -against- | : |
| LEE E. BUCHWALD, CHAPTER 7 TRUSTEE, | : |
| Appellee. | : |
| THE AD HOC CONSORTIUM OF RENCO METALS, INC. NOTEHOLDERS, | : |
| | : |
| Appellants, | Civil Action No. 16-cv-06844 (DLC) |
| -against- | : |
| LEE E. BUCHWALD, CHAPTER 7 TRUSTEE, | : |
| Appellee. | : |

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**CHAPTER 7 TRUSTEE'S MOTION TO DISMISS APPEALS**

---

STEVENS & LEE, P.C.
Nicholas F. Kajon, Esq.
485 Madison Avenue, 20th Floor
New York, NY 10022
(212) 319-8500
nfk@stevenslee.com

*Attorneys for Lee E. Buchwald, Appellee*

# <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ...................................................................................1

    A.    Background ..........................................................................................5

    B.    Bankruptcy Petitions and Conversion.................................................5

    C.    Renco Group Litigation ......................................................................6

    D.    Sale of the Renco Litigation Interest .................................................8

    E.    The Bankruptcy Court's Decision ......................................................8

    F.    The Instant Appeals ............................................................................9

LEGAL ARGUMENT....................................................................................................10

    I.    The Appeals Are Statutorily Moot and Must Be Dismissed....................10

        A.    Appellate Jurisdiction is Limited to the Issue of Good Faith Under 11 U.S.C. §363(m) Even If Other Meritorious Issues Are Raised ......10

        B.    The Bankruptcy Court Did Not Commit a Plain Error of Law or Make a Clearly Erroneous Finding That AEM Is a Good Faith Purchaser ...........................................................................................11

    II.    The Renco Defendants Lack Standing to Pursue Their Appeal ...............17

CONCLUSION...............................................................................................................19

SL1 1432547v1 070187.00005

# TABLE OF AUTHORITIES

CASES

*23 Jefferson St. LLC v. 636 Assets, Inc.*,
  2015 WL 5037343 (E.D.N.Y. Aug. 25, 2015)..........................................................................13

*In re Am. Express Merchants' Litig.*,
  554 F.3d 300 (2d Cir. 2009)..................................................................................................12

*In re Ames Dep't Stores, Inc.*,
  582 F.3d 422 (2d Cir. 2009)....................................................................................................4

*In re Bakalis*,
  220 B.R. 525 (Bankr. E.D.N.Y. 1998)..................................................................................14

*In re Barnet*,
  737 F.3d 238 (2d Cir. 2013)..................................................................................................18

*In re Charter Commc'ns, Inc.*,
  691 F.3d 476 (2d Cir. 2012), *cert. denied*, 133 S.Ct. 2021, 185 L.Ed.2d 905
  (2013)......................................................................................................................................4

*In re Colarusso*,
  382 F.2d 51 (1st Cir. 2004)..................................................................................................10

*In re DBSD North America, Inc.*,
  634 F.3d 79 (2d Cir. 2011)....................................................................................................18

*In re DPH Holdings Corp.*,
  468 B.R. 603 (S.D.N.Y. 2012)..............................................................................................18

*In re Flynn*,
  200 B.R. 481 (Bankr. D. Mass. 1996) ..................................................................................12

*In re Gucci*,
  105 F.3d 837 (2d Cir. 1997)............................................................................................11, 14

*In re Gucci*,
  126 F.3d 380 (2d Cir. 1997)..................................................................................................12

*Hower v. Molding Sys. Eng'g Corp.*,
  445 F.3d 935 (7th Cir. 2006) ................................................................................................13

*Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*,
  936 F.2d 744, 747 (2d Cir. 1991)..........................................................................................18

(ii)

*Kabro Associates, West Islip v. Colony Hill Associates,*
    111 F.3d 269 (2d Cir. 1997)........................................................................15, 16

*Kane v. Johns–Manville Corp.,*
    843 F.2d 636 (2d Cir. 1988)........................................................................17, 18

*In re Lehman Bros. Holdings, Inc.,*
    415 B.R. 77 (S.D.N.Y. 2009)........................................................................4, 13

*In re Metaldyne Corp.,*
    421 B.R. 620 (S.D.N.Y. 2009)........................................................................12

*In re Miner,*
229 B.R. 561 (B.A.P. 2d Cir. 1999)........................................................................4

*In re Old HB, Inc.,*
    525 B.R. 218 (S.D.N.Y. 2015)........................................................................18

*In re Premier Operations,*
    294 B.R. 213 (S.D.N.Y. 2003)........................................................................4

*In re Rock Industries Machinery Corp.,*
    572 F.2d 1195 (7th Cir. 1978) ........................................................................18

*Travelers Ins. Co. v. H.K. Porter Co., Inc.,*
    45 F.3d 737 (3d Cir. 1995)........................................................................18

*In re United States Lines, Inc.,*
    197 F.3d 631, (2d Cir. 1999)........................................................................4

*Warth v. Seldin,*
    422 U.S. 490, 499, 509, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)........................................................................4

## STATUTES, RULES & REGULATIONS

11 U.S.C. § 363........................................................................5, 11, 12

11 U.S.C. § 363(m)........................................................................3, 10, 11, 12, 14

11 U.S.C. §§ 1107 and 1108........................................................................5

28 U.S.C. § 158(a)........................................................................4

Fed. R. Bankr. P. 8013........................................................................4

Fed. R. Civ. P. 50 and 59........................................................................7

H.R. Rep. No. 95-959........................................................................11

SL1 1432547v1 070187.00005

## PRELIMINARY STATEMENT

Appellee, Lee E. Buchwald, as Chapter 7 trustee (the "**Trustee**") of the estates of Magnesium Corporation of America ("**MagCorp**") and Renco Metals, Inc. ("**Metals**", and together with MagCorp, the "**Debtors**"), by and through his undersigned attorneys, Stevens & Lee, P.C., respectfully submits this memorandum of law in support of his *Motion to Dismiss* (the "**Motion to Dismiss**") the appeals of Renco Group and Ira Rennert (the "**Renco Defendants**") and the Ad Hoc Consortium of Renco Metals, Inc. Noteholders, (the "**Noteholders**", together with the Renco Defendants, the "**Appellants**") from the *Order Pursuant to 11 U.S.C. §§ 105 and 363, and Federal Rules of Bankruptcy Procedure 2002, 6004 and 9014 Approving Sale of Renco Litigation Interest, dated August 24, 2016* (the "**Sale Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") in the Chapter 7 bankruptcy case styled *In re Magnesium Corporation of America, Inc.,* et al., Bankr. Case No. 01-14312 (MKV) (B. Dkt. No. 745).[1]

These appeals arise out of the entry of the Sale Order approving the sale (the "**Sale**") of the Renco Litigation Interest.[2]   In 2015, the Debtors' estates achieved a tremendous victory

---

[1] Citations to the docket in the Chapter 7 bankruptcy case no. 01-014312 (MKV) will be abbreviated herein as "B. Dkt."

[2] The Renco Litigation Interest is defined in the Asset Purchase Agreement between the Trustee and AEM SPV LLC ("**AEM**") as:

> the right to receive the Renco Litigation Consideration  from the Net Proceeds (as hereinafter defined) of Seller's and/or the Debtors' recoveries from the Amended Judgment, and/or any further proceedings in connection therewith, and the Cross-Appeal, and/or any further proceedings in connection therewith.  "Net Proceeds" shall consist of any cash or other consideration Seller and/or the Debtors receive in full or partial satisfaction of the Amended Judgment and the Cross-Appeal, and/or any further proceedings in connection therewith, whether through settlement, enforcement or otherwise ("Gross Recoveries"), after deducting from Gross Recoveries the sum of:  (a) 3% of Gross Recoveries on account of the Seller's chapter 7 commissions; (b) an amount equal to the sliding scale contingency fee of Kellogg Huber, Seller's appellate counsel, up to a maximum of Two Million Dollars ($2,000,000); and (c) 41% of Gross Recoveries on account of the contingency fee of Beus Gilbert, Seller's trial counsel.  If the Net Proceeds include non-cash components (e.g., shares of stock) and if the cash components

1

against the Renco Defendants, resulting in an amended judgment of approximately $213 million, which is currently on appeal to the United States Court of Appeals for the Second Circuit. The Trustee designed the process of selling the Renco Litigation Interest to raise much-needed liquidity for the Debtors' estates prior to oral argument on the Renco Defendants' appeal, which will likely not occur until at least November 2016. The Renco Defendants, having failed to even request stay of the Sale, are now engaging in a futile attempt to appeal a court order in which they have no interest and which, in any case, involved a sale that has now been consummated. Likewise, the Noteholders are engaging in unnecessary appellate practice, raising issues that cannot properly be heard on appeal and other issues which are completely devoid of merit.

These appeals are the latest attempts to derail the Trustee's efforts to provide a fair return to the creditors of the Debtors' estates after over a decade of bankruptcy-related litigation. The Trustee determined, in the exercise of his business judgment and the broad discretion accorded him under the Bankruptcy Code to manage the Debtors' estates, to sell the Renco Litigation Interest to AEM for $26.2 million. The reasoning behind the Sale – to hedge the estates' downside exposure on the appeal of the $213 million judgment before the Second Circuit and

---

of the Net Proceeds are insufficient for Seller to pay the Renco Litigation Consideration, then Seller shall, (a) at the direction of the Buyer in its sole discretion, pay the Buyer in-kind based on the cash value of such non-cash components, provided Buyer and Seller agree on the value of such non-cash components, or (b) in the absence of agreement on the value of such non-cash components, Seller shall monetize said non-cash Net Proceeds as soon as commercially reasonable in a manner expressly agreed to by the Buyer and Seller and pay the Buyer in cash. Upon Seller's and/or the Debtors' receipt of any Gross Recoveries, Seller shall (a) promptly calculate Renco Litigation Consideration and Net Proceeds in the manner set forth herein, (b) provide three (3) business days' written notice thereof to Buyer, and (c) after expiration of said notice period, promptly pay the amount of the Renco Litigation Consideration to Buyer from Net Proceeds. Seller shall retain all other recoveries from the Renco Group Litigation for the benefit of the Debtors' estates. Buyer shall have no recourse against Seller or the Debtors' estates for the Renco Litigation Consideration, which shall only be payable from the Net Proceeds of Seller's and/or the Debtors' recoveries from the Amended Judgment and the Cross-Appeal, and/or any further proceedings in connection therewith.

2

any further proceedings against the Renco Defendants while preserving all of the upside of the Cross-Appeal for creditors, to provide much needed liquidity to the Debtors' estates, and to guarantee that there will be funds available to pay long-suffering general unsecured creditors irrespective of the outcome of the appeal – was deemed sound by the Bankruptcy Court and, as a result, the Sale was approved.   The Bankruptcy Court held that the Trustee conducted an appropriate marketing and auction process, obtained a higher and better offer than the original offer made by AEM, and is now in a position to provide the Debtors' estates with cash for distribution.   Moreover, as this Court recognized, many of the arguments put forward by the Appellants, particularly those related to the good faith of the Sale, were waived by Appellants' failure to raise these objections in their responsive papers before the Bankruptcy Court.   *See Transcript of September 7, 2016 hearing on emergency motion for stay pending appeal*, a true and correct copy of which is annexed hereto as **Exhibit "A"**, at 26:1-2, 49:11-14.

The Court need not reach the merits of the appeals of the Sale, which has already been consummated in good faith following this Court's denial of the Noteholders' request for a stay. Rather, the Court may dismiss the appeals for two well-founded reasons.  First, Section 363(m) of the Bankruptcy Code provides that any attempt to appeal a sale with a good faith purchaser, once consummated, is moot if a stay of the sale had not been obtained prior to closing of the Sale.  Such is the case here: no stay was obtained by either of the Appellants and, in fact, this Court denied the Noteholders' request for an emergency stay of the Sale pending appeal.  Well-established Second Circuit precedent limits the scope of the appeals to the issue of AEM's good faith; the Bankruptcy Court's finding on that issue was not clearly erroneous, thus mooting the appeals.  Second, the Renco Defendants are not "persons aggrieved" as that term is defined under Second Circuit case law.  They have no stake in the outcome of this appeal and as such,

3

lack the requisite standing to prosecute an appeal of the Sale Order. For this reason, which is sufficient on its own accord, the Renco Defendants' appeal should be dismissed.

The time has come to put an end to the Appellants' relentless, unfounded litigation and permit a modicum of closure after over a decade of this matter languishing in bankruptcy. These appeals are statutorily moot and singularly devoid of merit. The Sale Order should be affirmed in all respects, and these appeals should be dismissed.

## STANDARD OF APPELLATE REVIEW

District Courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy courts. 28 U.S.C. § 158(a). A District Court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree." Fed. R. Bankr. P. 8013. While a bankruptcy court's findings of fact are not conclusive on appeal, "the party that seeks to overturn them bears a heavy burden." *In re Lehman Bros. Holdings, Inc.*, 415 B.R. 77, 83 (S.D.N.Y. 2009) (quoting *In re Miner*, 229 B.R. 561, 565 (B.A.P. 2d Cir. 1999)). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ." *Id.* "A finding is 'clearly erroneous' when" the reviewing court is "left with the definite and firm conviction that a mistake has been made." *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 426 (2d Cir. 2009) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Legal conclusions by a bankruptcy judge receive *de novo* review on appeal. *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 483 (2d Cir. 2012), *cert. denied*, 133 S.Ct. 2021, 185 L.Ed.2d 905 (2013). "In regards to mixed questions of law and fact, the [District] Court must review findings of fact under the clearly erroneous standard and the conclusions of law *de novo*." *In re Premier Operations*, 294 B.R. 213, 217 (S.D.N.Y. 2003) (citing *In re United States Lines, Inc.*, 197 F.3d 631, 640–41 (2d Cir. 1999)).

SL1 1432547v1 070187.00005

## STATEMENT OF THE CASE

### A.   Background

Since 1993, MagCorp has been a subsidiary of Metals, which is merely a holding company with no operations of its own.  Metals is or was a wholly owned subsidiary of The Renco Group, which is beneficially owned by Ira Rennert ("**Rennert**"), Chairman of Metals and The Renco Group, Inc. ("**Renco Group**"), directly or through trusts established by him for the benefit of himself or members of his family (the "**Rennert Trusts**").  In 1996, MagCorp sold $150 million in 11-$^{1}/_{2}$% senior notes due in 2003 (the "**1996 Notes**").  Renco Group and Rennert caused more than half of the proceeds of the 1996 Notes to be conveyed to Renco Group in the form of dividends and redemption of preferred stock previously issued by Metals, which was held by Renco Group.  Thereafter, the Debtors paid additional funds to insiders in the form of dividends and bonuses.   All such conveyances occurred at times when the Debtors were insolvent (or such conveyances rendered the Debtors insolvent).

### B.   Bankruptcy Petitions and Conversion

On August 2, 2001 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").  On June 24, 2002, substantially all of the Debtors' assets (other than litigation claims) were sold pursuant to section 363 of the Bankruptcy Code to U.S. Magnesium, LLC, an Affiliate of Rennert, a non-debtor entity that owns Metals.  The Debtors remained in possession of their respective properties and management of their respective businesses pursuant to sections 1107 and 1108 of the Bankruptcy Code until April 14, 2003, when the, the Bankruptcy Court entered an order granting the application of the United States Trustee to appoint the Trustee as the Chapter 11 trustee of these cases.  Thereafter, by order dated September 25, 2003, the Debtors'

cases were converted to cases under Chapter 7 of the Bankruptcy Code. The Trustee was appointed Chapter 7 trustee of the Debtors' estates that same day.

### C.  Renco Group Litigation

On July 31, 2003, the Trustee's special litigation counsel, Beus Gilbert PLLC ("**Beus Gilbert**"), commenced adversary proceeding 03-6559 against The Renco Group, Inc., *et al.* (the "**Renco Group Litigation**"). The claims asserted in the Renco Group Litigation included those based on, *inter alia*, fraudulent conveyance, breach of fiduciary duty, negligence/professional malpractice, breach of contract, negligent misrepresentation, corporate waste and mismanagement, declaration and receipt of unlawful dividends and wrongful redemption of stock in violation of Delaware law, and unjust enrichment. This Court withdrew the reference of the Renco Group Litigation from the Bankruptcy Court, *Buchwald v. The Renco Group, Inc., et al.*, 13-cv-07948 (AJN).

A jury trial commenced on February 2, 2015 and concluded on February 27, 2015, at which time the jury returned a verdict in the Trustee's favor in the aggregate amount of $118,220,000, consisting of (a) an award of damages against Renco Group in the amount of $101,000,000, (b) an award of damages against Rennert and the Rennert Trusts, jointly and severally, in the amount of $16,220,000, and (c) an additional award of $1,000,000 in punitive damages against Renco Group. On March 16, 2015, District Court Judge Nathan issued a Memorandum & Order determining that prejudgment interest would be applied at the rate of 6% per annum, not compounded, and commencing on the Petition Date. On March 23, 2015, after calculating interest on the jury awards, the Clerk of Court entered judgment in the aggregate amount of $214,199,093.70 in the Trustee's favor, as follows:  (a) against Renco Group in the amount of  $184,698,246.58, and (b) against Rennert and the Rennert Trusts, jointly and severally, in the amount of $29,500,847.12.

6

On April 20, 2015, Renco Group, Rennert and the Rennert Trusts filed a motion under Rules 50 and 59 of the Federal Rules of Civil Procedure asking the District Court to enter judgment as a matter of law or, in the alternative, to order a new trial.  Also on April 20, 2015, Beus Gilbert filed a motion under Rule 59 to amend the judgment, requesting that the rate of prejudgment interest be increased from 6% to the 9% annual rate provided by New York State law, and that interest be calculated from July 2, 2000, the last date the Debtors had paid interest on the 1996 Notes. By decision and order entered on August 20, 2015, District Court Judge Nathan ruled on the parties' post-trial motions as follows:  (a) the motion by Renco Group, Rennert and the trustees of the Rennert Trusts for judgment as a matter of law was granted in part, but only with respect to the Trustee's claims for unjust enrichment and punitive damages, and denied in all other respects; (b) the same Defendants' motion for a new trial was denied; (c) the remaining Defendants' motion for judgment as a matter of law was denied as moot; and (d) the Trustee's motion to alter or amend the judgment to increase the amount of prejudgment interest was denied.   District Judge Nathan requested that the Clerk amend the judgment accordingly.  Renco Group, Rennert and the trustees of the Rennert Trusts filed a Notice of Appeal on August 20, 2015.

The Clerk entered an amended judgment on August 24, 2015 (the "**Amended Judgment**") against Renco Group in the amount of $183,698,246.58 (plus post-judgment interest) and against Ira Rennert in the amount of $29,500,847.12 (plus post-judgment interest), for an aggregate recovery in the amount of $213,199,093.70 (plus post-judgment interest).  On September 16, 2015, the Trustee filed a notice of cross-appeal, and the Trustee is currently prosecuting his cross-appeal for prejudgment interest under Delaware law that exceeds the prejudgment interest awarded under New York law (the "**Cross-Appeal**").

### D.   Sale of the Renco Litigation Interest

Beginning in early March 2016, the Trustee began a marketing and auction process in connection with the sale of the Renco Litigation Interest, which included setting up a virtual data room and reaching out to nine prospective bidders.  Negotiations ensued with several bidders.  Ultimately, AEM submitted the best bid and the Trustee negotiated the terms of the AEM sale agreement.

On June 23, 2016, the Trustee filed a motion to (i) approve bid procedures, (ii) schedule a hearing to approve the sale of the Renco Litigation Interest, and (iii) approve the form and manner of notice of an auction for the Renco Litigation Interest.  (B. Dkt. No. 710).  The Bankruptcy Court approved the bid procedures by order dated July 18, 2016 (B. Dkt. No. 724) (the "**Bid Procedures Order**").  Thereafter, on August 11, 2016, the Trustee conducted an auction for the Renco Litigation Interest, at which AEM was the highest bidder.  The Noteholders and the Defendants each separately objected to the sale to AEM and thereafter, on August 23, 2016, the Bankruptcy Court conducted a hearing to approve the sale to AEM (the "**Sale Hearing**").

### E.   The Bankruptcy Court's Decision

On August 23, 2016, the Bankruptcy Court held a sale hearing pursuant to Section 363(b).  Appellants had notice of the sale hearing and an opportunity to file objections to the proposed sale order.  Each filed an objection and participated in the Sale Hearing.  Following oral argument and over the objections of Appellants, the Bankruptcy Court entered the Sale Order.  (B.Dkt. 745).  At the conclusion of the Sale Hearing, counsel for the Noteholders orally applied for a stay pending appeal, which the Bankruptcy Court denied.  *See* Sale Hearing Transcript at 102:17-103:5, a true and correct copy of which is annexed hereto as **Exhibit "B"**.

SL1 1432547v1 070187.00005

The Renco Defendants failed to request a stay of the Sale from the Bankruptcy Court or this Court.

### F.   The Instant Appeals

On August 30, 2016, the Renco Defendants filed a Notice of Appeal of the Sale Order. (R. Dkt. 1).[3]   The Noteholders filed a Notice of Appeal of the Sale Order the next day (N. Dkt. 1)[4], and on September 1, 2016, the Noteholders filed an *Emergency Motion to Stay Sale Order Pending Appeal* (the "**Emergency Motion**").  (N. Dkt. 5).  On September 7, 2016, the Trustee filed a memorandum of law in opposition to the Emergency Motion (N. Dkt. 9), a hearing was held that same day, and this Court denied the Noteholders' request for a stay of the sale order pending appeal.  Exhibit A at 51:1-11.  In doing so, this Court determined "that the Bankruptcy Court carefully weighed whether the [T]rustee had considered all the salient factors in recommending and pursuing this sale and acted to further the diverse interests of the debtor, the creditors and the equity holders alike," that the Trustee had exercised his proper business judgment in pursuing the Sale, and that the Bankruptcy Court's "reasoning is well supported by the record." Exhibit A at 51:1-11.  Following the denial of the request for a stay, the Sale closed at approximately 10:00 am on September 8, 2016.  *See* the accompanying Declaration of Nicholas F. Kajon, Esq. at ¶¶ 3-4, Exhibits A through C.  On September 20, 2016, the Trustee filed a Notice of Sale Closing. (B. Dkt. 758).

Ultimately, there is no need for this Court to even reach the merits of the Appellants' assertions on appeal.  First, because the Renco Defendants failed to seek a stay of the Sale Order, their appeal is statutorily moot.  Second, because the Noteholders' motion for a stay of the Sale

---

[3] Citations to the docket in the appeal by the Renco Defendants, case number 16-06822-DLC, shall be designated herein as "R. Dkt."

[4] Citations to the docket in the appeal filed by the Noteholders, case number 16-06844-DLC, shall be designated herein as "N. Dkt."

Order was denied, and the Sale closed, their appeal is also statutorily moot.  Third, the Renco Defendants lack standing to prosecute their appeal as they are not "persons aggrieved."  At bottom, these appeals must be dismissed.

## LEGAL ARGUMENT

### I.   THE APPEALS ARE STATUTORILY MOOT AND MUST BE DISMISSED.

Both appeals suffer from a fundamentally fatal flaw in that they are statutorily moot.  The Sale was not stayed by this Court, and the Sale closed on September 8, 2016. As a result, this Court's review of the Sale Order is limited to reviewing the Bankruptcy Court's finding that AEM is a good faith purchaser for clear error.  Accordingly, the Court need not reach the merits of any other arguments raised on either appeal and should not review those other issues, *de novo* or otherwise.  As the Bankruptcy Court did not commit a plain error of law or make a clearly erroneous finding that the Sale was made in good faith, the appeals must be dismissed.

### A.   Appellate Jurisdiction is Limited to the Issue of Good Faith Under 11 U.S.C. §363(m) Even If Other Meritorious Issues Are Raised.

Finality in sales consummated in the context of a bankruptcy is a paramount principle and is embodied in Section 363(m) of the Bankruptcy Code, which states, in relevant part:

> The reversal or modification on appeal of an authorization . . . of a sale or lease of property *does not affect the validity of a sale* or lease under such authorization to an entity that purchased or leased such property in good faith . . . *unless such authorization and such sale or lease were stayed pending appeal.*

11 U.S.C. § 363(m) (emphasis supplied).  This "reflects the salutary policy of affording finality to judgments approving sales in bankruptcy by protecting good faith purchasers, the innocent third parties who rely on the finality of bankruptcy judgments in making their offers and bids." *In re Colarusso*, 382 F.2d 51, 62 (1st Cir. 2004).  The Second Circuit has made clear that once a sale conducted pursuant to Section 363 has been consummated, courts are deprived of

10

jurisdiction to review the sale except on the limited issue of whether the sale was made to a good faith purchaser. *In re Gucci*, 105 F.3d 837, 839 (2d Cir. 1997) The Second Circuit has also made clear that *"regardless of the merit of an appellant's challenge to a sale order*, [an appellate court] may neither reverse nor modify the judicially-authorized sale if the entity that purchased . . . the property did so in good faith and if no stay was granted." *Id.* at 840 (emphasis supplied). The legislative history of Section 363(m) further reveals that Congress intended to protect "good faith purchasers of property. . . from a reversal on appeal of the sale authorization, unless the authorization for the sale and the sale itself were stayed pending appeal." H.R. Rep. No. 95-959, at 344.

The applicable law in this area is clear. The Renco Defendants elected not to seek a stay of the Sale, but instead stood by as the Sale was fully consummated by the Trustee and AEM. And while the Noteholders did seek a stay of the Sale Motion both before the Bankruptcy Court and this Court, both of the requests were denied. The Appellants' failure to obtain a stay of the Sale to a good faith purchaser renders an appeal from the Sale Order moot. *Gucci*, 105 F.3d at 839. Having failed to establish a lack of good faith, both appeals must be denied as moot under Section 363(m) and dismissed.

### B. The Bankruptcy Court Did Not Commit a Plain Error of Law or Make a Clearly Erroneous Finding That AEM Is a Good Faith Purchaser.

The only possible issue properly before this Court is whether or not AEM purchased the Renco Litigation Interest in good faith. As previously made clear in the Trustee's opposition to the Noteholders' Emergency Motion, this is a non-starter: not only did the Bankruptcy Court directly opine on and incorporate a finding of good faith into the Sale Order, but the issue itself was not raised until the Renco Defendants and Noteholders, sensing the inevitable approval of the Sale by the Bankruptcy Court, began grasping at straws during the Sale Hearing. Not once

was AEM's good faith questioned during the sales process or in the Appellants' written objections to the Sale Motion; rather, the issue only surfaced once counsel for the Renco Defendants and Noteholders decided to throw in the kitchen sink in a last-ditch attempt to avoid approval of the Sale.

Mixed questions of law and fact, such as the determination regarding the good faith of a purchaser in connection with a sale under Section 363 of the Bankruptcy Code, are reviewed "under the clearly erroneous standard depending on whether the question is predominantly legal or factual." *In re Am. Express Merchants' Litig.*, 554 F.3d 300, 316 n. 11 (2d Cir. 2009) (citation omitted). Although the Bankruptcy Code does not define "good faith purchaser," the Second Circuit utilizes the traditional equitable definition: "one who purchases the assets for value, in good faith and without notice of adverse claims." *In re Metaldyne Corp.*, 421 B.R. 620, 624-25 (S.D.N.Y. 2009) (citation omitted). In assessing good faith in the context of a Section 363 sale, courts examine "the integrity of [a purchaser's] conduct during the course of the sale proceedings [since] where there is lack of such integrity, a good faith finding may not be made." *Id.* Good faith is absent where a purchaser engaged in fraud or there was "collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* (citation omitted). At bottom, the good faith requirement is designed to serve the salutary purpose of prohibiting "fraudulent, collusive actions specifically intended to affect the sale price or control the outcome of the sale." *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997)

First and foremost, by failing to deny the good faith allegations, AEM's good faith under Bankruptcy Code section 363(m) is deemed admitted by the Appellants. *In re Flynn*, 200 B.R. 481, 485 (Bankr. D. Mass. 1996). This Court recognized as much during the hearing on the Noteholders' Emergency Motion, stating that the issues regarding good faith were not "a

preserved objection and there was a time for written objections where objection was not made," Exhibit A at 26:1-2, and further that "many of the arguments that were made at the [Sale H]earing . . . were, in effect waived, because they hadn't been timely made in writing" and in any case "haven't been properly preserved on appeal." *Id.* at 49:11-14.  Even if that were not the case, however, the Appellants have abjectly failed to substantiate any claims of fraud or collusion on the part of the Trustee or AEM, or that the Bankruptcy Court's finding of good faith was clearly erroneous.  The Appellants' failure to support their accusations of bad faith prevents them from effectively challenging the Bankruptcy Court's determination of AEM's good faith. *See*, *e.g.*, *Hower v. Molding Sys. Eng'g Corp.*, 445 F.3d 935, 939 (7th Cir. 2006) (stating that the burden is on the party alleging bad faith or seeking reconsideration of a good-faith finding, and further holding that "[i]n the absence of any admissible evidence of bad faith, we cannot say that it was clear error for the bankruptcy judge to conclude that the sale occurred in good faith."). The Appellants simply cannot carry their "heavy burden to show that the finding was clearly erroneous."  *Lehman Bros.*, 415 B.R. at 83–84.  The perfunctory allegations of the lack of good faith and unsupported hyperbolic speculation of same made during the Sales Hearing are insufficient to demonstrate as much.  *See 23 Jefferson St. LLC v. 636 Assets, Inc.*, 2015 WL 5037343, at *5 (E.D.N.Y. Aug. 25, 2015).

Contrary to the Appellants' assertions, the Bankruptcy Court's finding of good faith was not based upon mere speculation; rather, the Bankruptcy Court based its conclusion on evidence presented at the Sale Hearing by the Trustee that he conducted a robust marketing process and conducted a competitive auction process, leading to an increase in the stalking horse bid originally proposed by AEM.  Exhibit B at 93:24-94:7 ("The Court also finds that there has been adequate marketing of the asset .… And then there was competitive bidding in terms of the

13

auction process.  And indeed there was an increase in value of the initial stalking horse bid that was approved by the Court at the last hearing.  I think the [N]oteholders have in fact acknowledged that the process was competitive.").

In *Bakalis*, a case in the Eastern District of New York with similar facts, the bankruptcy court concluded that failure to show any untoward conduct by the purchaser during the sales proceedings (which included a quickly-concluded bidding process at arms-length with the trustee) precluded a finding of bad faith.  *In re Bakalis*, 220 B.R. 525, 537-38 (Bankr. E.D.N.Y. 1998). Indeed, the bankruptcy court noted that the challenging party "offered no evidentiary support whatsoever" of any bad faith conduct.  *Id.*  Moreover, a mere "aggressive litigation strategy" during the sales process does not amount to conduct aimed at controlling the sale price or taking unfair advantage of bidders, as required by *Gucci* to forfeit the good faith status of a purchaser.  *Id.*

The Trustee clearly and cogently discussed AEM's good faith in his motion to approve the bid procedures and proposed sale of the Renco Litigation Interest, annexed hereto as **Exhibit "C"**.  The Trustee unmistakably represented that any asset purchase agreement between the Trustee and the successful bidder will be "negotiated at arms'-length and in good faith" such that the successful bidder will be subject to the protections of Section 363(m).  Exhibit C at ¶72.  The Trustee thereafter expressly requested that the Bankruptcy Court make a finding "that the Agreement reached with the Successful Bidder was at arms'-length and is entitled to the protections of Bankruptcy Code Section 363(m)."  *Id.* at ¶73.

The representations in the Trustee's sale motion that the sale to AEM would be conducted at arms' length and in good faith went unchallenged until the midst of the Sale Hearing, with counsel opining that there "was really nothing for [him] to say" about the good

faith of the proposed sale until the record closed because he "didn't know what the evidence was going to be." Exhibit B at 56:25-57:2. Counsel then argued that "there's nothing in the record to find good faith." *Id*. at 59:5-9. The Trustee's counsel responded that the good faith of AEM was an "uncontroverted fact" and that had an objection been raised to the issue, the Trustee would have submitted the appropriate evidence. *Id.* at 69:14-70:16.

In approving the Sale to AEM, the Bankruptcy Court determined "that the sale that is proposed is a sale to a good faith purchaser" and overruled the Appellants' objection, stating that "the law is clear that the good faith of a purchaser is shown by the integrity of the purchaser's conduct during the course of the sale proceedings" and that "a purchaser's good faith is lost by a showing of fraud, collusion between the purchaser and other bidders, or the trustee, or an attempt to take grossly unfair advantage of other bidders." Exhibit B at 94:15-96:1. Because no evidence was submitted to impugn the integrity of the sales process, or any evidence of collusive bidding, improper agreements or understandings between and among the parties, the Bankruptcy Court found that the purchase was in made in good faith:

> The record is clear, as I said, that there was a robust marketing process. Indeed, in the initial motion that was made back in June to approve the bidding procedures, and set a sale hearing at paragraph 72 of the initial sale motion, which is Item 710 on the docket, there is an allegation that the agreement between AEM and the trustee was negotiated at arm's length and in good faith. There has been no evidence put forth today that calls into question the integrity of the sales process. And in fact, the only evidence in the record is that the auction increased the consideration of being paid by AEM, and no evidence, whatsoever, of any kind of collusive bidding or improper agreements or understandings between and among the parties was put forward. So I have no evidence before me of the type that the Second Circuit has cited to in *Kabro Associates, West Islip v. Colony Hill Associates*, 111 F.3d 269, 276 (2d Cir. 1997), where the Second Circuit said, typically the misconduct that would destroy a successful bidder's good faith status at a judicial sale involves fraud, "collusion between the [successful bidder] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." Quoting *In re Rock Industries Machinery Corp.*, 572 F.2d 1195 (7th Cir 1978). The

SL1 1432547v1 070187.00005

Court therefore concludes that the sale satisfies the requirements of and qualifies under § 363(f).

Exhibit B at 95:3-96:1.

In denying the Noteholders' request for a stay of the Sale, this Court recognized that the Appellants made "no identification of any reason to believe there was collusive behavior or bad faith" on the part of AEM with respect to the Sale or otherwise. Exhibit A at 26:11-12. This Court has also already stated that, quite simply, the Appellants made "no showing . . . that there is a substantial possibility of success on appeal here." *Id.* at 49:18-19. And, consistent with Second Circuit precedent, this Court aptly noted that

> [B]idders who enter an auction process have the right to trust that the sale process will work.  They put a lot of energy and effort into the due diligence and creation of the bids and the participation in the process and they, like everyone else, [are] entitled to have a sale that is approved by the Bankruptcy Court moving forward, as scheduled.  Beyond that, there is a strong public interest in the finality of proceedings, judicial proceedings generally. This has involved the sale process, enormous work by the Bankruptcy Court, and all the parties in the bankruptcy proceeding.  It has resulted in multiple hearings, multiple orders, very lengthy submissions, a lengthy argument before the bankruptcy court, full findings of fact supported by citations to legal authorities in the Bankruptcy Court's ruling.  The sale process is entitled to respect and the Bankruptcy Court's rulings are entitled to be upheld unless there is a showing that meets the standards on appeal and that showing has not been made here.

*Id.* at 50:1-18.

Despite the foregoing, the Appellants continue to press their unfounded claims that AEM is not a purchaser in good faith, notwithstanding the transparent sales process, the Trustee's uncontroverted representations of good faith and evidence of a robust marketing process, and the Bankruptcy Court's findings, all of which make it abundantly clear that quite the opposite is true. All relevant facts regarding the Sale were disclosed prior to the Sale Hearing and, as the Second Circuit has stated, such disclosure "weigh[s] heavily in a bankruptcy court's decision" on the issue of good faith. *Colony Hill Assocs.*, 111 F.3d at 277.  Based upon the unrebutted assertions

SL1 1432547v1 070187.00005

within the Sale Motion and at the Sale Hearing that the Sale would be consummated in good faith, the Bankruptcy Court correctly concluded that AEM is a good faith purchaser.   The Appellants have pointed to no evidence that contradicts the Bankruptcy Court's finding of good faith (because there is none), which is fatal to their attempt to reverse the Bankruptcy Court's findings.   Manifestly, the Bankruptcy Court's finding of good faith is neither clearly erroneous nor a plain error of law, and accordingly, the sole basis upon which any appeal of the Sale Order could be premised is a non-starter.   This alone warrants dismissal of the appeals.

## II.  THE RENCO DEFENDANTS LACK STANDING TO PURSUE THEIR APPEAL.

Regardless of the merits of any issues they raise before this Court, the Renco Defendants' appeal must be dismissed for lack of standing.   Appellate standing in bankruptcy cases is more limited than standing under Article III.   "Generally, litigants in federal court are barred from asserting the constitutional rights of others."  *Kane v. Johns–Manville Corp.*, 843 F.2d 636, 643 (2d Cir. 1988) (citing *Warth v. Seldin*, 422 U.S. 490, 499, 509, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).   The court in *Kane* explained why limits on third-party standing are particularly relevant to appellate standing in bankruptcy proceedings:

> Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself.   Third-party standing is of special concern in the bankruptcy context where, as here, one constituency before the court seeks to disturb a plan of reorganization based on the rights of third parties who apparently favor the plan.   In this context, the courts have been understandably skeptical of the litigant's motives and have often denied standing as to any claim that asserts only third-party rights.

*Id.* at 644; *see also Travelers Ins. Co. v. H.K. Porter Co., Inc.*, 45 F.3d 737, 741 (3d Cir. 1995) (adopting the reasoning of *Kane*).

"[T]o have standing to appeal from a bankruptcy court ruling, an appellant must be 'a person aggrieved'—a person 'directly and adversely affected pecuniarily' by the challenged

order of the bankruptcy court." *In re DBSD North America, Inc.*, 634 F.3d 79, 89 (2d Cir. 2011) (quoting *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991)); *In re DPH Holdings Corp.*, 468 B.R. 603, 612 (S.D.N.Y. 2012). "The 'aggrieved person' standard requires that an appellant show *both* 'injury in fact' under Article III, and that the injury suffered is direct and financial." *In re DPH Holdings Corp.*, 468 B.R. at 612; *Kane*, 843 F.2d at 642; *In re Old HB, Inc.*, 525 B.R. 218, 221–22 (S.D.N.Y. 2015) (under the "person aggrieved" standard, appellant cannot proceed if it cannot demonstrate it suffered a direct financial injury as a result of the order under appeal. This standard is "stricter than Article III's injury in fact test, and its stringency is rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters." *In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013) (internal quotation marks and citation omitted).

The Renco Defendants simply cannot demonstrate that they are "persons aggrieved" by the entry of the Sale Order: they are not creditors of the Debtors and are not directly affected in a personal or pecuniary manner. Because they have not suffered an injury-in-fact as a result of the Sale Order, the Renco Defendants' appeal must be dismissed at the outset for lack of standing.

SL1 1432547v1 070187.00005

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court dismiss the Appellants' respective appeals with prejudice.

Dated:  September 21, 2016

STEVENS & LEE, P.C.

By: /s/ Nicholas F. Kajon
   Nicholas F. Kajon
   485 Madison Avenue, 20th Floor
   New York, NY  10022
   (212) 319-8500
   nfk@stevenslee.com

*Attorneys for Lee E. Buchwald, Appellee*

19